## Kersey v. Wright Machine Company.

(Decided October 3, 1919.)

### Appeal from Daviess Circuit Court.

1. Contracts—Equitable Relief of Cancellation.—Under a contract whereby a company agreed to manufacture machines under patent or patents owned by plaintiff, and to pay plaintiff a salary and royalties, after three years plaintiff brought suit in equity for

.cancellation of the contract because of failure of the company to use suitable material in the manufacture of the machines. Held, that plaintiff should have ceased to accept the benefits of the contract, to-wit, his salary and royalties, and asserted his right to cancellation as soon as he knew the defendant had violated the contract, or within reasonable time thereafter, and having accepted these benefits with knowledge of the alleged breach for a period of over three years, he is not now entitled to demand the equitable relief of a cancellation.

2.    Contracts—Equitable Relief of Cancellation—Pleading.—The court did not err in sustaining demurrer to the petition as amended in which plaintiff asks cancellation of a contract for violation, when petition shows that such violation was continuous over a period of more than three years, during which time plaintiff, with full knowledge of the alleged breach, accepted the benefits of the contract and did not assert his right to demand a rescission or cancellation, although protesting against suitability of material used in the manufacture of machines under said contract.

3.    Contracts—Construction.—There being no provision in the contract as to the material to be used in manufacturing the parts of the machinery defendant was only required to use such material as was reasonably suitable; a provision in the contract that plaintiff was to "instruct and assist" defendant being wholly insufficient to confer upon plaintiff the right to arbitrarily dictate the materials to be used.

4.    Contracts—Pleading.—A "key book" in which steel was indicated as the material out of which certain parts should be made, cannot be made part of the contract by the simple allegation that it accompanied the patterns referred to in the contract, without any allegation that the defendant company had knowledge of its existence.

5.    Contracts—Reformation.—In order to present a right of reformation it must be shown that a provision alleged to have been omitted was omitted by mutual mistake of the parties.

W. T. ELLIS and J. R. HAYS for appellant.

W. P. SANDIDGE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

By this action appellant sought the cancellation of a written contract and damages for its breach. A demurrer was sustained to the petition as amended and the action dismissed, from which judgment this appeal is prosecuted. As counsel for appellant do not contend a cause was stated for damages, we shall consider the petition, as only we are asked to consider it, merely to ascertain whether the facts pleaded were sufficient to authorize a cancellation. The contract is as follows:

"Owensboro, Ky., November 1, 1913.

"This contract, made and entered into by and between Francis E. Kersey, of Owensboro, Kentucky, and his assigns or successors, and Gunther Wright Machine Company, a corporation, hereafter designated as the 'company,' of Owensboro, Kentucky, and its assigns or successors.

"Witnesseth: The said Kersey is the inventor of a power excavating machine used for handling earth and like material, and known as a power shovel and power dredge; and that he has been granted a patent on certain parts of said machine, evidenced as No. 881695, dated March 10th, 1908, by the United States Government of America, and that he is the exclusive owner of said patent; and that at the time of the making of this contract no party, firm or corporation has, by contract or otherwise, any claim on said patent or any right to the use or protection of said patent.

"Furthermore, the said Kersey has heretofore constructed, or caused to be constructed, several of said machines, known as 'power shovels' and 'power dredges,' and he owns and has in his possession unincumbered, assembled and detailed drawings, tracings, prints and patterns of said machines and the said machines made as stated above were made from said patterns and said drawings, and the said machines were properly proportioned and gave good and practicable service for the purpose for which they were intended.

"The said Kersey furthermore says that he is anxious to have said machines manufactured, and that he has not the necessary tools, shop, equipment or money to make and market said machinery, and the said Kersey, therefore, contracts with the said company to make and market said machinery.

"Furthermore, the said Kersey grants to the said company the exclusive right and protection on said patent, as well as any further patent or patents that may be granted said Kersey for improvement on any machine used for the same or like purpose; and that he will guarantee said company against loss or infringement on said patent or patents, and prosecute and defend such action at the expense of said Kersey, as may be necessary in the

opinion of said company, to the full and complete protection under said patents.

"Furthermore, the said Kersey agrees to assign to the said company a one-half undivided interest in the above named patent or patents, which the company is to hold during the life of this contract; provided, however, that in the event said company discontinues to manufacture said machinery under said patent or patents, the said patent or patents are to revert back to the said Kersey.

"The said Kersey agrees to loan said company all patterns, drawings, tracings and prints that he has pertaining to said machinery, but said company does not become responsible for same, except that the company is to exercise the ordinary caution to retain and preserve same while in its custody. It is understood, however, that in the event said company ceases to manufacture said machinery under said Kersey's patent or patents within three years, then said patterns, drawings, tracings and prints loaned to said company by said Kersey shall revert to said Kersey. And it is further agreed that if the said company shall comply with this contract and continue the manufacture and sale of said machinery for a period exceeding three years, then said Kersey agrees to release any and all claims that he may have on said patterns, drawings, tracings and prints, and the same are to become the property of said company.

"The said company has had no experience in the manufacture and sale of said machinery at the time this contract is entered into, and therefore the said Kersey agrees to instruct and assist said company until said company becomes familiar with same.

"The said Kersey further states that Scott-Madden Iron Works, of Keokuk, Iowa, now in liquidation, has made some of the above mentioned machines, and that said Scott-Madden Iron Works now has on hand and owns parts of said machines and some patterns, drawings, tracings and prints that can be used by said company (Gunther-Wright Machine Company) in the manufacture of said machinery under this contract. Said Kersey agrees to use his influence and to assist said company to purchase and obtain all of said parts, patterns, drawings, tracings and prints from the said Scott-

Madden Iron Works, but the cost and expense of obtaining same are to be paid and borne by said company.

"In consideration of the exclusive rights and protecttion and transfer of said patent or patents, the said company agrees to pay to the said Kersey two per centum of all the money collected from the sale of all of said dredges and shovels covered by said patent or patents, as a royalty on said sales. It is agreed, however, that no royalty is to be paid on repair parts sold or for machines that have been used, known as second-hand machines. The said two per cent royalty is to be paid semi-annually on January 1st and July 1st. Said company is to keep a full and complete record of all sales and collections, and said Kersey may have access to examine said books to determine said royalty.

"Furthermore, said company is desirous of securing the full service of said Kersey to assist the company in carrying out this contract, especially in making sales and practically demonstrating said machines; and said Kersey assures said company that he can sell all machines that said company can make for three years, and agrees to accept a position with said company and to devote all of his time, attention and energies in giving service to said company to make the manufacture and sale of said machines profitable to said company and said Kersey. In consideration of which, said company agrees to pay said Kersey for said services the sum of one hundred and fifty ($150.00) dollars per month for a term of three years from the date of this contract. Furthermore, to pay the necessary travelling expenses of said Kersey incurred in the service of said company. At the end of three years a new agreement is to be made between said Kersey and said company for said Kersey's services.

"The said Kersey, at the time of entering into this contract, has incomplete contracts for dredging and grading, and the said company agrees to give said Kersey sufficient time to complete said contracts before said Kersey enters into the employ of said company.

"In the event said company finds the manufacture of said machines profitable, the said company agrees to make the necessary drawings and patterns, at the expense of said company, for like machines of larger capacity than the ones made from the drawings and patterns

furnished by the said Kersey; and.to manufacture and market said larger machines as fast as is practicable.

"It is further agreed, that if said company should at any time discontinue 'the manufacture of said machines, it agrees not to dispose of any patterns, drawings, tracings or prints that said company may have, without the consent of said Kersey, and the said Kersey agrees to buy said patterns, drawings, tracings and prints that may be the property of said company, and pay the company one-half the first cost of same to said company, allowing a reasonable amount for overhead expense in the making of same.

"This contract is to remain in full force during the life of said patent and future patents on said power excavator dredges and shovels, provided same is profitable to said company. It being necessary, however, for the company to furnish at their own expense, shop facilities, tools and equipment and large sums of money to carry out said contract, and as the manufacture of said machines is a new venture to said company, and as there is a possibility of said company losing large sums of money in trying to manufacture and market said machines, therefore, the company reserves the right to discontinue the manufacture of said machines and cancel its contract for said Kersey's services at any time the said company may so decide after a term of two years from the date of this contract; and in this event said Kersey is to use his influence and good will with any customer that said company may find to whom such machines and parts thereof may be offered for sale, but the said Kersey, in doing this, does not agree to lose any time from his other work that he is engaged in, or to be at any expense.

"In testimony whereof, witness the signature of the parties hereto this done at Owensboro, Kentucky, November 1st, 1913.

"FRANCIS E. KERSEY,
"GUNTHER-WRIGHT MACHINE Co.
(Incorporated.)
"Per JOHN S. WRIGHT,
V. Prest. and Gen. Mgr."

The name of the appellee has been changed since the execution of the contract from Gunther-Wright Machine Company to the Wright Machine Company.

There is no fraud alleged in the execution of the contract, the sole ground for cancellation being an alleged breach of its performance, it being averred that "defendant has broken and violated the terms, conditions and agreements of said contract in every particular; he says it refused to construct said machines or any one of same out of suitable or proper material as it agreed to do; he says the plans, prints and patterns of said machines, and of each of them, required said machines to be constructed of first class steel, but that defendant failed and refused to use steel in the construction of said machines, but constructed same out of cheap and indifferent cast iron and by reason of this fact the machines so constructed by defendant under said contract broke, were worthless and failed to stand and do the work for which they were designed and which they would have done if they had been constructed out of proper and suitable material and as plaintiff directed, and as the contract required. Plaintiff insisted and demanded of defendant that it construct said machines out of proper and suitable material and it refused so to do. . . . He states he has often demanded of defendant that it comply with its contract as set out above in reference to building power shovels and power dredges as in said contract specified and hereinbefore set out; that defendant failed and refused so to do and on July 5, 1917, he notified defendant that he had terminated said contract."

These are the only allegations of the petition (not withdrawn by the plaintiff) attempting to assert a breach of the contract, but it is averred that plaintiff performed all of his obligations under the contract including assistance and instruction in construction of the machines and in their sale, presumably until July 5, 1917, when, according to the allegations of the petition, he first asserted such a violation upon the part of the defendant as entitled him to a cancellation of the contract. It is therefore apparent that in the original petition it was his contention that the terms of the contract specified the materials out of which the several parts of the machines were to be constructed, but this it does not do, as there is no reference in any part of the contract as to what materials were to be used in the construction of the machines, and hence the defendant was required to use in their construction not such materials as the plaintiff

might dictate, but only such as were reasonably suitable for such purposes; the provision of the contract that appellant was to "instruct and assist" the defendant until it became familiar with the construction of the machines being wholly insufficient to confer upon the plaintiff the right to arbitrarily dictate the materials out of which the several parts were to be constructed.

By an amended petition plaintiff attempted to incorporate into the contract a book called a "key" in which steel was indicated as the material out of which certain parts should be made, and which parts are alleged in the amended petition not to have been made of steel but of cheap and inferior metal, but it is only alleged that this "key" book accompanied the patterns, drawings, plans and specifications loaned by the plaintiff, and it is not alleged that the company at the time of the execution of the contract knew of the existence of any such key book, and not having been referred to even in the contract, it cannot, of course, be made a part of the contract by the simple allegation that it accompanied the patterns, etc., referred to in the contract, without any allegation that the company had knowledge of its existence or contents.

It is also attempted in one of the amendments to the petition to reform the contract upon the ground that these parts were to be made of steel and that such was the agreement of the parties, and that such provision was omitted from the contract by mistake, but the allegation of mistake is only that such a provision was omitted from the contract by oversight of the draftsman, there being no allegation that the omission was by mutual mistake of the parties, which was, of course, necessary to present a right of reformation. Coleman, &c. v. Illinois Life Insurance Co., 26 Ky. L. R. 900; Hill v. Petit, 23 Ky. L. R. 2001, 34 Cyc. 975.

It is, therefore, apparent that the only breach of the contract alleged, if any, is the failure upon the part of the defendant to construct certain designated portions of the machine out of material reasonably suitable for the purpose which the contract by necessary inference obligated the defendant to do. It is extremely doubtful whether the petition sufficiently makes this charge, except upon the assumption nowhere alleged that steel only was suitable for the construction of the parts about which the complaint is made; but even if we assume that

the petition does allege that the material used in the construction of the parts complained of was not reasonably suitable for the purpose we are clearly of the opinion that this allegation in connection with the admissions of the petition that plaintiff for more than three years, i. e., from November 1, 1913, until July 5, 1917, remained in the employment of the defendant under the contract at $150.00 a month, and assisted in constructing such ·machines as it could and did construct during that time and putting same upon the market, before attempting a cancellation, was such conduct upon his part, although he had insisted upon the use of steel rather than wrought iron for the manufacture of the parts complained of, as would render it unconscionable upon his part to cancel the contract after, by reason of his long delay in asserting a right to rescission, the defendant, not alleged to have acted otherwise than in perfect good faith and reasonable despatch in carrying out the terms of the contract, must necessarily have incurred great expense for labor, material, dies and other necessary equipment required for its performance of the contract. That the defendant continued so to do over a period of more than three years was admittedly with the full knowledge of the plaintiff and in which he acquiesced, at least insofar as the validity of the contract was concerned, although protesting against the suitability of the material used in making certain parts of the machine. During all of this time plaintiff received from the defendant $150.00 a month for his services, which presumably consisted solely of instructing and assisting the defendant in the construction and sale of these machines, and in addition to his salary he also received a royalty of two per cent out of the proceeds of the sales of such machines as were sold. Whether or not he should have offered to make restitution of such benefits as he had derived from the contract, or whether he should have made it appear that it was possible to place the defendant *in statu quo*, questions we need not decide, it is certain in equity and good conscience that as soon as he knew the defendant had violated its contract, which under his allegations he must have known almost from the beginning, he should have ceased to accept his employment and royalties under the contract and asserted his right to rescission or cancellation. Not having done so as soon as he might, or within

a reasonable time thereafter, he did not do equity, and therefore is not entitled to demand the equitable relief of a cancellation of the contract; and the court did not err in sustaining the demurrer to the petition as amended.

Wherefore the judgment is affirmed.